**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Bernadette Paine,

Plaintiff,

v.

Investment and Administrative
Committee of The Walt Disney
Company Sponsored
Qualified Benefit Plans and Key
Employees Deferred
Compensation and Retirement
Plan et al,

Defendants.

Case No. 2:20-cv-08610-VAP-KSx

**Order GRANTING IN PART Defendants' Motion for Summary Judgment (Doc. No. 102) and GRANTING IN PART Plaintiff's Motion for Summary Judgment (Doc. No. 105)**

Defendants Investment and Administrative Committee of The Walt Disney Company Sponsored Qualified Benefit Plans and Key Employees Deferred Compensation and Retirement Plan ("Plan Administrator"), Twenty-First Century Fox, Inc. ("Fox"), and The Walt Disney Company ("Disney") (collectively, "Defendants") filed a Motion for Summary Judgment ("Defendants' MSJ") on June 2, 2022.  (Doc. No. 102.)  Plaintiff Bernadette Paine ("Plaintiff") filed a Motion for Summary Judgment ("Plaintiff's MSJ") and opposition to Defendants' MSJ on June 28, 2022.  (Doc. No. 105-1.) Defendants filed an opposition to Plaintiff's MSJ ("Defendants' Opp'n") and

reply in support of Defendants' MSJ on July 26, 2022.  (Doc. No. 111.)
Plaintiff filed a reply ("Plaintiff's Reply") in support of Plaintiff's MSJ on
August 15, 2022.  (Doc. No. 112.)

After considering all papers filed in support of, and in opposition to,
the motions, as well as the arguments advanced at the hearing, the Court
**GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary
Judgment, and **GRANTS IN PART** and **DENIES IN PART** Defendants'
Motion for Summary Judgment.

## I.      BACKGROUND

Plaintiff initiated this action on September 21, 2020.  (*See* Doc 1.)
Plaintiff alleges that she used to work for Fox, and that following the merger
between Disney and Fox, Disney terminated her employment without cause
and incorrectly categorized her termination as a voluntary resignation.
(SAC, Doc. No. 43, ¶ 2.)  Plaintiff further alleges that the Plan Administrator
improperly denied her claim for severance benefits under the terms of an
employee benefit plan.  (*Id.* ¶ 23.)  Accordingly, Plaintiff seeks to recover the
severance benefits pursuant to the Employee Retirement Income Security
Act of 1974 ("ERISA"), as well as damages for the Plan Administrator's
alleged breach of fiduciary duty and Disney and Fox's alleged breach of her
employment contract.  (*See id.* ¶¶ 27-50.)

On June 2, 2022, Defendants filed their Motion for Summary
Judgment, (Doc. No. 102), and a Statement of Undisputed Facts,
("Defendants' SUF," Doc. No. 102-1.)  Defendants also filed two

declarations: Declaration of Brian D. Murray ("Murray Decl."), attaching Exhibits A through AC; and Declaration of Ryan Stankevich ("Stankevich Decl."), attaching Exhibit A.  (*See* Doc. No. 102.)

On June 28, 2022, Plaintiff filed her Motion for Summary Judgment and opposition to Defendants' MSJ, (Doc. No. 105-1), a Statement of Undisputed Facts, ("Plaintiff's SUF," Doc. No. 106), a Statement of Genuine Issues, ("Plaintiff's SGI," Doc. No. 107), and evidentiary objections to Defendants' SUF, (Doc No. 108.)  Plaintiff also filed three declarations: Declaration of Craig P. Ramsdell ("Ramsdell Decl."), attaching Exhibits A through K; Declaration of Dr. Robert Leonard ("Leonard Decl."), attaching Exhibits A and B; and Declaration of Bernadette Paine ("Paine Decl.").  (*See* Doc. No. 109.)

On July 26, 2022, Defendants filed an opposition to Plaintiff's MSJ and reply in support of Defendants' MSJ, (Doc. No. 111), a Statement of Genuine Issues, ("Defendants' SGI," Doc. No. 111-8), evidentiary objections to the Leonard Decl. and Plaintiff's SUF (Doc. Nos. 111-7, 111-9), and responses to Plaintiff's SGI and evidentiary objections (Doc. Nos. 111-5, 111-6.)  Defendants also filed a second Declaration of Brian D. Murray ("Second Murray Decl."), attaching Exhibits AD through AF.  (*See* Doc. No. 111.)

On August 15, 2022, Plaintiff filed a reply in support of Plaintiff's MSJ, (Doc. No. 112), and responses to Defendants' SGI and evidentiary objections.  (Doc. Nos. 112-1, 112-2, 112-3.)

3

United States District Court
Central District of California

## II.    LEGAL STANDARD

A motion for summary judgment or partial summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotations and citation omitted).  Thus, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Id.* (quoting Wright, et al., Federal Practice and Procedure § 2720, at 335–36 (3d ed. 1998)).  If, however, the cross-motions are before the court at the same time, the court must consider the evidence proffered by both sets of motions before ruling on either one.  *Riverside Two*, 249 F.3d at 1135–36.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment.  *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998).  "The moving party may produce evidence negating an essential element of the nonmoving party's case, or . . . show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire &*

4

*Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (reconciling *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  The nonmoving party must then "do more than simply show that there is some metaphysical doubt as to the material facts" but must show specific facts which raise a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party.  *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).  "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## III.   EVIDENTIARY ISSUES

Plaintiff asserts numerous objections to Defendants' SUF, and Defendants likewise raise numerous objections to the Leonard Decl. and Plaintiff's SUF.  (Doc Nos. 108, 111-7, 111-9.)

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also Weil v. Citizens Telecomm. Servs. Co.*, 922 F.3d 993, 998 (9th Cir. 2019) ("we may only consider admissible evidence when reviewing a motion for summary judgment").  At the summary

judgment stage, a district court should "focus on the admissibility of the [evidence's] contents" and not on the form in which the evidence is presented—it is sufficient that a party will be able to produce evidence in an admissible form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). Further, "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and thus need not be considered on a motion for summary judgment. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

Both parties object to evidence they claim is irrelevant or constitute legal conclusions. These objections are unnecessary because they are "duplicative of the summary judgment standard itself." *See Burch*, 433 F. Supp. 2d at 1120. Both parties also object to the language in the statements of undisputed facts as vague, ambiguous, or a mischaracterization of the evidence. These are not objections to the evidence, but objections to the other party's description of the evidence, and the Court does not consider them. *See Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1034 (C.D. Cal. 2013) ("The parties' evidentiary objections to their adversary's separate statements of undisputed facts are not considered because such objections should be directed at the evidence supporting those statements." (cleaned up)).

Plaintiff makes several additional objections on the grounds that Defendants' evidence lacks foundation. These objections are part of a

series of "blanket objections without analysis applied to specific items of evidence," *Doe v. Starbucks, Inc.*, No. 08-0582, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009), and the Court need not "scrutinize each objection and give a full analysis of identical objections raised as to each fact." *Stonefire Grill*, 987 F. Supp. 2d at 1033 (C.D. Cal. 2013).  After reviewing these objections, the Court determines that they lack merit.

Defendants make various objections on the grounds that Plaintiff's evidence is incomplete, citing Federal Rule of Evidence 106.  However, "Rule 106 does not authorize the Court to exclude evidence; instead, it permits the adverse party to include evidence." *Milton H. Greene Archives, Inc. v. BPI Commc'ns, Inc.*, 378 F. Supp. 2d 1189, 1197 n.6 (C.D. Cal. 2005).  Because Defendants do not seek to introduce evidence they have not already submitted in support of their MSJ, the Court overrules their Rule 106 objections.

Defendants also make several objections to the declaration of Dr. Robert Leonard.  Plaintiff offers the declaration in support of her second claim for breach of fiduciary duty.  As the Court determines, for the reasons below, that Plaintiff lacks standing to bring her breach of fiduciary duty claim, the Court overrules Defendants' objections to Dr. Leonard's declaration as moot.

## IV.   FACTS

Plaintiff and Defendants each filed statements of undisputed facts, (Defendants' SUF, Doc. No. 102-1; Plaintiff's SUF, Doc. No. 106), and both

filed a statement of genuine issues (Defendants' SGI, Doc. No. 111-8; Plaintiff's SGI, Doc. No. 107.)  Local Rule 56 allows the Court to find that "the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Issues' *and* (b) controverted by declaration or other written evidence filed in opposition to the motion."  Local Rule 56–3 (emphasis added).  To the extent certain facts or contentions are not mentioned in this Order, the Court has not found it necessary to consider them in reaching its decision.

### A. Undisputed Facts

The following material facts are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purposes of deciding Defendants' MSJ and Plaintiff's MSJ.  *See* C.D. Cal. L.R. 56-3.

1. Employment Offer and Severance Plan

On April 16, 2018, Plaintiff began working at Fox as Vice President of Worldwide Marketing Strategy and Communications.  (Defendants' SUF No. 3; Plaintiff's SGI No. 3.)  Her offer for employment stated in relevant part: "The company offers a comprehensive package of benefits to you as a Fox employee, including medical, dental, vision, life, disability, flexible spending accounts, and 401(k)."  (Defendants' SUF No. 7; Plaintiff's SGI No. 7.)

In addition to the benefits listed in Plaintiff's offer letter, Fox provides some of its employees severance benefits under the Twenty-First Century

United States District Court
Central District of California

Fox, Inc. Severance Plan (the "Plan").  (Defendants' SUF No. 98; Plaintiff's SGI No. 98.)  Under the Plan, an employee may be entitled to severance benefits if he or she experiences a "Qualifying Termination."  (Defendants' SUF No. 102; Plaintiff's SGI No. 102.)  A Qualifying Termination is defined as a termination "(1) by the Company other than due to Termination for cause, (2) by reason of the Participant's death or Permanent Disability or (3) by the Participant for Good Reason."  (Defendants' SUF No. 104; Plaintiff's SGI No. 104.)  The Plan's definitions for "Permanent Disability" and "Good Reason" are not relevant to the present action.

### 2.  Plan Delegation

The Plan provides that the Plan Administrator shall have the power "to administer and interpret the Plan."  (Defendants' SUF No. 135; Plaintiff's SGI No. 135.)  This includes the power to "make all decisions regarding questions of coverage, eligibility and entitlement to benefits, and benefit amounts," and to "resolve and clarify inconsistencies, ambiguities and omissions in the Plan document."  (Defendants' SUF No. 135; Plaintiff's SGI No. 135.)  The Plan also authorizes the Plan Administrator to "delegate any of its duties . . . to such person or persons from time to time as it may designate."  (Defendants' SUF No. 135; Plaintiff's SGI No. 135.)

### 3.  Administrative Record

On March 20, 2019, Disney and Fox merged.  (Defendants' SUF No. 107; Plaintiff's SGI No. 22.)  On July 26, 2019, Plaintiff's employment with Fox ended.  (Plaintiff's SUF No. 17; Defendants' SGI No. 17.)

1    A month after the end of her employment with Fox, Plaintiff submitted

2 a claim for severance benefits to the Plan Administrator, claiming that her

3 "Termination was involuntary and not for Cause."  (Defendants' SUF Nos.

4 108-09; Plaintiff's SGI Nos. 108-109.)  On October 21, 2019, the Plan

5 Administrator denied her claim because "[a]ccording to the Company's

6 Workday employment system of record, [Plaintiff's] termination is indicated

7 as 'Voluntary, Personal/Family Reasons.'"  (Defendants' SUF Nos. 114-115;

8 Plaintiff's SGI Nos. 114-115.)

9

10    Plaintiff appealed the denial on December 19, 2019.  (Defendants'

11 SUF No. 117; Plaintiff's SGI No. 117.)  In support of her claim, Plaintiff

12 submitted various work-related emails from May through July of 2019

13 showing she was still performing her job duties during those months.

14 (Plaintiff's SUF No. 8; Defendants' SGI No. 8.)  Plaintiff additionally

15 submitted a declaration stating that on July 8, 2019, she requested vacation

16 leave from July 29, 2019 through August 9, 2019—a time period following

17 the date of her alleged termination—and that her supervisor had granted her

18 request.  (Plaintiff's SUF No. 19; Defendants' SGI No. 19.)  Finally, Plaintiff

19 submitted a series of emails between her and Suzie Davidson ("Davidson"),

20 Disney's Human Resources Director.  (Defendants' SUF No. 19; Plaintiff's

21 SGI No. 19.)  Included were the following:

22    • A June 27, 2019 email from Davidson stating, in part: "On at least

23    3 occasions, you have informed myself and others that you cannot

24    perform this role as a result of personal circumstances.  My

25    understanding is, therefore, that you have resigned . . . Under

26

these circumstances, I am suggesting a resignation date of Friday, July 12, 2019." (Defendants' SUF No. 74; Plaintiff's SGI No. 74.)

- A July 3, 2019 email from Plaintiff responding, in part: "I do not know why you have an understanding that I have resigned from my job. . . . Let me be clear. I have not resigned. I am not resigning. I will not resign. I will not agree to or provide you with any resignation date. I enjoy my job at Fox very much, and I am continuing to do that job and will continue to do it until Disney involuntarily terminates my employment." (Plaintiff's SUF No. 14; Defendants' SGI No. 14.)

- A July 24, 2019 email from Davidson stating, in part: "In our second meeting, sitting in your office, I very plainly used the language with you that your decision to not support [upcoming Disney projects] was equivalent to your decision to resign from your role, and you did not dispute this assertion. Given our understanding that you had resigned, your employment will be separated [sic] effectively this Friday, July 26." (Defendants' SUF No. 85; Plaintiff's SGI No. 85.)

- A July 24, 2019 email from Plaintiff responding, in part: "I totally disagree that I ever did or said anything to lead a reasonable person to believe that I had resigned, was resigning, or would resign. I also totally disagree with your rendition of our discussions at our second meeting. Any understanding on your part that I had resigned is wholly unfounded. Your email below constitutes Disney's notice of my involuntary termination, effective Friday, July 26, 2019." (Defendants' SUF Nos. 86; Plaintiff's SGI Nos. 86.)

- A July 25, 2019 email from Davidson stating, in part: "Again, given our understanding that you resigned, your employment will be separated effective this Friday, July 26. . . . While I understand that you had a scheduled vacation, given your separation date, you will not be paid vacation time."  (Defendants' SUF Nos. 87; Plaintiff's SGI Nos. 87.)

On February 12, 2020, the Administrative Subcommittee of the Plan Administrator (the "Subcommittee") met to consider Plaintiff's appeal. (Defendants' SUF No. 126; Plaintiff's SGI No. 126.)  On February 18, 2020, the Subcommittee sent a letter ("Denial Letter") to Plaintiff informing her of its decision to deny her appeal.  (Defendants' SUF No. 132; Plaintiff's SGI No. 132.)  The Denial Letter stated in relevant part: "The Company did not provide [Plaintiff] with a notice of termination nor was she involuntarily terminated by the Company.  In fact, according to the Company's Workday employment system of record, [Plaintiff's] termination is indicated as 'Voluntary, Personal/Family Reasons.'"  (Plaintiff's SUF No. 24; Defendants' SGI No. 24.)

### B.  Disputed Facts

The parties dispute whether the Subcommittee considered all the documents provided by Plaintiff in support of her claim.  Plaintiff points to the Denial Letter's failure to address the contents of the documents as evidence that the Subcommittee did not consider them.  (Plaintiff's SGI No. 133.)  Defendants offer the Denial Letter to support the contrary conclusion, noting that the Denial Letter states that the Subcommittee reviewed "the

United States District Court
Central District of California

supporting documentation [Plaintiff] provided."  (Defendants' SUF No. 133.)

Defendants additionally offer testimony averring that the Subcommittee

"balanced what [Plaintiff] said with what the company said, as well in the

emails that were included in the appeal letter . . . [and] looked at all the facts

and circumstances that were included . . . in the appeal letter and all the

other administrative record in totality, including Suzie Davidson and

[Plaintiff]."  (Defendants' SUF No. 138.)

# V.   DISCUSSION

## A.   Plaintiff's Motion for Summary Judgment

### 1.   Severance Benefits Claim

The parties agree that the Plan is governed by ERISA.  (SAC ¶ 7;

Defendants' MSJ at 12.)  Under ERISA, "[a] civil action may be brought . . .

by a participant or beneficiary . . . to recover benefits due to him under the

terms of his plan, to enforce his rights under the terms of the plan, or to

clarify his rights to future benefits under the terms of the plan."  29 U.S.C. §

1132(a)(1)(B).  With her first claim, Plaintiff seeks to recover severance

benefits in accordance with the terms of the Plan.  (SAC, Prayer for Relief

¶¶ 1-2.)

### a.   Standard of Review

"When a plan does not confer discretion on the administrator 'to

determine eligibility for benefits or to construe the terms of the plan,' a court

must review the denial of benefits de novo."  *Abatie v. Alta Health & Life Ins.*

*Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (quoting *Firestone Tire & Rubber Co.*

*v. Bruch*, 489 U.S. 101, 115 (1989)).  However, "if the plan *does* confer

discretionary authority as a matter of contractual agreement, then the standard of review shifts to abuse of discretion."  *Abatie*, 458 F.3d at 963.

Plaintiff acknowledges that the Plan confers discretion on the Plan Administrator but asserts that the Plan Administrator "failed to delegate such discretion to the Subcommittee."  (Plaintiff's MSJ at 13.)  Therefore, Plaintiff argues, the Court should review the Subcommittee's decision denying her claim for severance benefits de novo.  (*Id.*)  Defendants disagree and contend that the Plan Administrator delegated its discretion to the Subcommittee at a March 9, 2019 meeting.  (Defendants' MSJ at 16.) Defendants accordingly advocate for an abuse of discretion standard.  (*Id.*)

During the Plan Administrator's March 9, 2019 meeting, the Plan Administrator adopted a resolution stating that it "delegates the responsibilities, duties or obligations to the non-voting members of the [Plan Administrator] (and/or one or more members of the [Plan Administrator] or such other individuals or committee of individuals as the [Plan Administrator]) to undertake the activities consistent with the presentation." (Ex. Y at 431, Murray Decl., Doc. 102-27.)  Although the resolution does not specifically reference the Subcommittee, Defendants offer testimony stating that it was standard practice for the Subcommittee to hear claims and appeals, and that the resolution was intended to formalize the Plan Administrator's delegation of authority to the Subcommittee.  (*See* Ex. X at 403, Murray Decl., Doc. 102-26; Ex. AA at 490, Murray Decl., Doc. 102-29.) The evidence provided by Defendants is sufficient to demonstrate such a delegation.  *See Hensley v. Nw. Permanente P.C. Ret. Plan & Tr.*, 258 F.3d

986, 998 (9th Cir. 2001), *overruled on other grounds by Abatie*, 458 F.3d at 966 (finding a valid delegation of discretion based only on affidavits stating that a delegation of authority took place).

Plaintiff argues that although the Plan Administrator may have delegated to the Subcommittee the power to decide claims, it did not delegate the power to "construe the terms of the plan." (Plaintiff's MSJ at 12 (quoting *Abatie*, 458 F.3d at 963).) The Court disagrees. The March 9, 2019 resolution delegated the "responsibilities, duties or obligations" of the Plan Administrator. (Ex. Y at 431, Murray Decl., Doc. 102-27.) The Plan describes the "[Plan Administrator's] responsibilities . . . [as] including, but not limited to, the sole and absolute discretionary authority to . . . resolve and clarify inconsistencies, ambiguities and omissions in the Plan document." (Defendants' SUF No. 135; Plaintiff's SGI No. 135.) The delegation of the Plan Administrator's responsibilities to the Subcommittee therefore encompasses the Plan Administrator's authority to interpret the Plan.

Plaintiff alternatively argues that the Court should review the Subcommittee's decision de novo because the Subcommittee "engaged in wholesale and flagrant violations of ERISA's procedural requirements." (Plaintiff's MSJ at 13.) The Ninth Circuit has held that procedural violations of ERISA may alter the standard of review if the violations "are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm." *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005). Here, Plaintiff

United States District Court
Central District of California

complains that the Subcommittee failed to address the evidence she presented and instead denied her claim on a "meritless basis."  (Plaintiff's MSJ at 13.)  This does not rise to the level of egregious conduct that the Ninth Circuit has found to warrant a higher standard of review.  *See, e.g.*, *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir. 1984) (reviewing an administrator's decision de novo when the administrator had kept policy details secret from employees, offered no claims procedure, and provided no summary plan description).

As the Plan Administrator delegated its discretion to the Subcommittee, and as Plaintiff offers no evidence showing that the Subcommittee engaged in flagrant violations of ERISA, the Court reviews the Subcommittee's decision for abuse of discretion.

    b.   <u>Reason for Denial</u>

Under ERISA, a plan administrator that has denied a claim for benefits must "set[] forth the specific reasons for such denial" and provide a "full and fair review" of the claim.  29 U.S.C. § 1133.  A plan administrator must offer "a rational reason for its denial," and abuses its discretion if it denies a claim "without explanation and without obtaining relevant information."  *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1464 (9th Cir. 1997).  Even if a plan administrator offers an explanation for its denial, it "may not arbitrarily refuse to credit a claimant's reliable evidence."  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Plaintiff's claim for severance benefits asserted that her "Termination was involuntary and not for Cause." (Defendants' SUF Nos. 108-09; Plaintiff's SGI Nos. 108-109.) The Subcommittee denied Plaintiff's claim because it concluded that Plaintiff was not "terminated by the Company." (Ex. G at 2, Murray Decl., Doc. 102-9.) In reaching this conclusion, the Subcommittee stated only that "[t]he Company did not provide [Plaintiff] with a notice of termination" and "according to the Company's Workday employment system of record, [Plaintiff's] termination is indicated as 'Voluntary, Personal/Family Reasons.'"[1] (*Id.*)

The Subcommittee's conclusion that Disney did not terminate Plaintiff's employment ignores multiple emails from Disney's Human Resources Director suggesting, and then setting, a separation date over Plaintiff's repeated opposition. (*See* Plaintiff's SUF No. 13-16; Defendants' SGI Nos. 13-16.) Although the Subcommittee was not required to recognize these emails as constituting notice of termination, or as sufficient to disprove the Workday categorization of Plaintiff's separation from Fox/Disney, the Subcommittee could not "arbitrarily refuse to credit" the evidence. *Black & Decker Disability Plan*, 538 U.S. at 834. Here, the Subcommittee abused its discretion by failing to address, much less credit, the evidence submitted by Plaintiff in support of her claim. *See Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 396 (7th Cir. 2009) ("ERISA requires plan

---

[1] The Subcommittee also determined that Plaintiff did not leave her job for "Good Reason." (Ex. G at 2, Murray Decl., Doc. 102-9.) The parties agree, however, that Plaintiff did not seek severance benefits on the basis that she left her job for "Good Reason." (Defendants' SUF No. 119; Plaintiff's SGI No. 119.)

administrators to . . . address any reliable evidence of eligibility put forward by the claimant."); *Boysen v. Illinois Tool Works Inc. Separation Pay Plan*, 767 F. App'x 799, 811 (11th Cir. 2019) ("[P]lan administrators . . . cannot refuse to consider key relevant information, or to investigate further when faced with potentially conflicting evidence.").

Defendants provide evidence that the Subcommittee did, in fact, consider Plaintiff's evidence, including Plaintiff's emails insisting she had not resigned, as well as Davidson's emails stating her understanding from previous conversations with Plaintiff that Plaintiff had resigned.  (*See* Ex. Y at 94, 96, Murray Decl., Doc. 102-26; Ex. Z at 62-63, Murray Decl., Doc. 102-28; Ex. AA at 134-135, 140, Murray Decl., Doc. 102-29.)  Defendants rely on the emails to argue that "there were instances where [Plaintiff] refused to take on the new role, or take on the role that the company had designed for her, or take on additional responsibilities associated with her role."  (Defendants' MSJ at 18 (quoting Ex. X at 66, Murray Decl., Doc. 102-26).)  Defendants contend that the Subcommittee "was not swayed by [Plaintiff's] transparent attempt to create a benefit claim" and ultimately concluded that Plaintiff effectively resigned from her job notwithstanding her statements to the contrary.  (Defendants' MSJ at 18-19.)

Had the Subcommittee advanced this reasoning in its Denial Letter, its decision would be entitled to substantial deference.  *See Booton*, 110 F.3d at 1464.  The rationale Defendants now advance, however, is nowhere to be found in the administrative record.  *Cf. Abatie*, 458 F.3d at 970 ("[I]n general, a district court may review only the administrative record when

considering whether the plan administrator abused its discretion.").  ERISA does not only require a plan administrator to come up with a rational reason for an adverse decision, it also requires the administrator to provide that reason to the claimant in a "written notice set[] forth in a manner calculated to be understood by the claimant."  29 C.F.R. § 2560.503-1(g)(1).  Here, the Subcommittee abused its discretion by not providing Plaintiff with an adequate explanation of its decision.

Having failed to provide Plaintiff with sufficient reasons for its denial of benefits during the administrative process, the Plan Administrator is foreclosed from asserting them now.  *See Harlick v. Blue Shield of California*, 686 F.3d 699, 721 (9th Cir. 2012).  "[A] contrary rule would allow claimants, who are entitled to sue once a claim has been 'deemed denied,' to be 'sandbagged' by a rationale the plan administrator adduces only after the suit has commenced."  *Id.* (quoting *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1199 n.2 (9th Cir.2010)).  The Ninth Circuit has therefore held that the appropriate remedy for a plan administrator's failure to explain its negative ruling after the claimant has presented evidence of his or her eligibility is to grant judgment in favor of the claimant.  *See Harlick*, 686 F.3d at 720-21 (declining to remand to the administrator so that the administrator could assert new reasons for its denial of benefits); *Booton*, 110 F.3d at 1465 (instructing the district court to enter summary judgment in favor of the claimant after the plan administrator failed to "couch its ruling[] in terms that are responsive and intelligible to the ordinary reader"); *cf. Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 460 (9th Cir. 1996) (holding that

remand to the plan administrator was appropriate because the plan administrator had not abused its discretion by "rendering a decision without explanation, or relying on clearly erroneous findings of fact").

Accordingly, the Court GRANTS Plaintiff's Motion for Summary Judgment as to her first claim for severance benefits.

2.  <u>Breach of Fiduciary Duty Claim</u>

ERISA requires a plan administrator to furnish to participants and beneficiaries a summary plan description that is "written in a manner calculated to be understood by the average plan participant" and "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan."  29 U.S.C. § 1022(a).  Plaintiff contends that the Plan, which the parties agree serves as its own summary plan description ("SPD"), (Plaintiff's SUF No. 41; Defendants' SGI No. 41), does not comply with ERISA's plain language requirements.  (Plaintiff's MSJ at 19.)  Plaintiff additionally alleges that the Plan Administrator breached its fiduciary duty by failing to: investigate the accuracy of Fox/Disney's Workday employment system; provide a full and fair review of Plaintiff's claim for severance benefits; produce the administrative record and other documents to Plaintiff upon request prior to its denial of Plaintiff's appeal; and consistently apply the provisions of the Plan to its employees.  (SAC ¶ 50.)  Plaintiff therefore asks the Court to remove the Plan Administrator, or in the alternative, order the Plan Administrator to provide plan participants and beneficiaries an ERISA-compliant SPD and undertake certain other actions designed to prevent it

20

from breaching its fiduciary duties in the future.  (*Id.*, Prayer for Relief ¶¶ 3-4.)

As the Court determines that Plaintiff has failed to meet her burden of establishing Article III standing, the Court does not reach the merits of the claim.  "Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  "The party invoking federal jurisdiction bears the burden of establishing standing—and, at the summary judgment stage, such a party can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-12 (2013) (cleaned up).

Here, Plaintiff avers that she paid her counsel between $5,000 and $10,000 for his assistance in helping her understand her rights under the Plan.  (Plaintiff's SUF No. 61.)   Plaintiff further argues that she would not have had to hire an attorney to help her interpret the Plan if the Plan Administrator had provided her with an ERISA-compliant SPD.  (Plaintiff's MSJ at 21.)  Plaintiff, however, fails to show how a favorable ruling would redress her injury.  The prospective relief Plaintiff seeks—for example, the dismissal of the Plan Administrator or an order requiring the Plan

United States District Court
Central District of California

21

United States District Court
Central District of California

Administrator to provide a more readable SPD—would do nothing to compensate her for her past monetary harm.[2]

While injunctive relief cannot redress a past injury, it may redress "continuing, present adverse effects" or the "real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). Plaintiff has demonstrated neither. First, Plaintiff has already hired an attorney to help her interpret the relevant portions of the Plan/SPD, brought the present action to address the Plan Administrator's alleged failure to provide a full and fair review of her severance claim, and obtained a copy of the administrative record and other documents she previously requested. Plaintiff has not provided evidence showing that she is continuing to incur costs related to the interpretation of the Plan/SPD, or that she is continuing to experience other adverse effects from the Plan Administrator's alleged breaches of fiduciary duty. Second, because Plaintiff is no longer employed at Fox/Disney, and because Plaintiff does not allege an intent to return, Plaintiff has not established a threat of repeated injury.

Plaintiff points to a footnote in *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615 (2020) to argue that "Plaintiff does not need to suffer actual harm for fiduciary breaches based on the failure to furnish plan information." (Plaintiff's Reply at 11.) Even so, Plaintiff must still establish a concrete injury, in the form of actual *or* imminent harm. *See Monsanto Co.*, 561 U.S.

---

[2] Plaintiff admits as much, stating that "[a]lthough the unlawful SPD caused [Plaintiff] monetary harm through attorney's fees, she only seeks declara-tory and injunctive relief relating to the SPD." (Plaintiff's Reply at 10.)

at 149.  In *Thole*, the Supreme Court reaffirmed that "Article III standing requires a concrete injury even in the context of a statutory violation." *Thole*, 140 S. Ct. at 1620-21 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016)).  It then held that the plaintiff plan participants did not sufficiently allege a concrete injury arising from the plan's mismanagement of funds, *id.* at 1618-19, but noted that its decision "does not concern suits to obtain plan information."  *Id.* at 1621 n.1.  The footnote does not propose the elimination of the concrete injury requirement for suits to obtain plan information.  Rather, it suggests that the plaintiffs' failure to demonstrate a concrete injury arising from the plan's mismanagement of funds does not preclude them from demonstrating a concrete injury arising from the plan administrator's refusal to provide plan information.

The Court recognizes that in certain circumstances, plan participants may have standing to sue for ERISA-complaint SPDs.  Plan participants who are entitled to continuing or future benefits under the Plan, for example, may demonstrate a threat of injury arising from the Plan Administrator's failure to provide an easily understandable SPD.  Plaintiff, however, has not provided evidence showing such a concrete injury.  She does not claim that she is entitled to other benefits under the Plan, or that her inability to interpret the Plan may make it more difficult for her to obtain those benefits in the future.

As Plaintiff has failed to meet her burden of establishing standing, the Court DENIES Plaintiff's Motion for Summary Judgment as to her second claim for breach of fiduciary duty.

3. <u>Breach of Contract Claim</u>

In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  Present in every contract is "an implied covenant of good faith and fair dealing . . . that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 658 (1958).

Plaintiff's third claim alleges that Fox/Disney breached her employment contract by mischaracterizing her alleged termination as a voluntary resignation in their Workday system.  (SAC ¶ 59.)  Although Fox/Disney's alleged mischaracterization does not violate an express term of the contract, Plaintiff argues that it nevertheless constitutes a breach of contract because it interfered with her right to receive the severance benefits she was entitled to under the employment agreement.  (Plaintiff's MSJ at 24-25.)  Plaintiff therefore seeks an order of specific performance requiring Fox/Disney to change the Workday entry to "reflect that [her] employment was terminated by Disney and not for cause."  (SAC ¶ 60.)

As a preliminary matter, Plaintiff has failed to provide evidence showing that the employment contract provided for severance benefits independent of the Plan.  *Cf. Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 546 F.3d 639, 657 (9th Cir. 2008) (ERISA preempts a state cause

24

of action if it is premised on the existence of an ERISA plan).  The

employment contract refers to a "comprehensive package of benefits . . .

including medical, dental, vision, life, disability, flexible spending accounts,

and 401(k)," but makes no mention of severance benefits.  (Ex. I, Murray

Decl.).  Although Plaintiff argues that she understood that her benefits

package would include severance benefits, (Plaintiff's MSJ at 24-25.), she

does not claim to have understood that she would be receiving a separate

set of severance benefits apart from the one included in the Plan.  Nor does

she provide evidence of a similar understanding on the part of Fox/Disney

necessary to support a finding of mutual assent.  *Cf. Donovan v. RRL Corp.*,

26 Cal. 4th 261, 270 (2001) ("An essential element of any contract is the

consent of the parties, or mutual assent."); *Martinez v. BaronHR*, Inc., 51

Cal. App. 5th 962, 967 (2020) ("Mutual assent is determined under an

objective standard applied to the outward manifestations or expressions of

the parties, i.e., the reasonable meaning of their words and acts, and not

their unexpressed intentions or understandings.").


Even if the contract included an implied right to severance benefits,

however, the extraordinary remedy of specific performance is not

appropriate under these circumstances.  "It is a basic doctrine of equity

jurisprudence that courts of equity should not act . . . when the moving party

has an adequate remedy at law."  *Sonner v. Premier Nutrition Corp.*, 971

F.3d 834, 844 (9th Cir. 2020) (quoting *Mort v. United States*, 86 F.3d 890,

892 (9th Cir. 1996)).  Here, Plaintiff has an adequate legal remedy in the

form of damages.  The fact that Plaintiff has not chosen to pursue this legal

remedy does not permit her to pursue an equitable remedy.

Finally, Plaintiff has failed to meet her burden of establishing standing to pursue the relief she seeks.  Plaintiff fails to provide essential details concerning her rights to severance benefits under the employment contract, including the amount of severance she is entitled to, or whether the benefits are contingent on the nature of her separation.  Plaintiff does not claim that her implied severance benefits apply only in the event of an involuntary termination, for example, so it is not at all clear how changing a Workday entry to reflect an involuntary termination would assist her in obtaining severance benefits or otherwise redress her injury.

For the reasons discussed above, the Court DENIES Plaintiff's Motion for Summary Judgment as to her third claim for breach of contract.

## B.   Defendants' Motion for Summary Judgment

### 1.   Severance Benefits Claim

Defendants move for summary judgment on Plaintiff's first claim for severance benefits.  (*See* Defendants' MSJ at 15-21.)  Although the Court must consider each cross motion for summary judgment on its own merits and separately, *Riverside Two*, 249 F.3d at 1136, the Court has already addressed Defendants' arguments with respect to Plaintiff's claim for severance benefits above.  As Defendants raise no new arguments in support of their Motion for Summary Judgment that the Court did not already consider, the Court DENIES Defendants' Motion for Summary Judgment with respect to the claim for severance benefits for the same reasons it granted Plaintiff's Motion for Summary Judgment with respect the claim for severance benefits.

2. <u>Breach of Fiduciary Duty and Breach of Contract Claims</u>

Defendants additionally move for summary judgment on Plaintiff's second and third claims for breach of fiduciary duty and breach of contract. (*See* Defendants' MSJ at 21-25).  As a threshold matter, Plaintiff bears the burden of establishing standing to bring her claims.  *Clapper*, 568 U.S. at 411-412.  At the summary judgment stage, Plaintiff must do so by setting forth "specific facts."  *Id.* at 412.

In ruling on Plaintiff's Motion for Summary Judgment, the Court determined that Plaintiff failed to set forth specific facts demonstrating standing with respect to her second and third claims.  *See supra*.  This failure entitles Defendants to summary judgment on those claims.  *See Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102 ("A moving party without the ultimate burden of persuasion at trial" need only "show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.").  The Court therefore GRANTS Defendants' Motion for Summary Judgment with respect to the second and third claims for breach of fiduciary duty and breach of contract.

## VI.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendants' Motion for Summary Judgment with respect to the first claim, and **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment with respect to the second and third claims.  As no other claims

remain, the parties are directed to meet and confer to determine the amount of monetary damages Plaintiff is due under the Plan.

**IT IS SO ORDERED.**

Dated:    9/27/22

_____
Virginia A. Phillips
United States District Judge